May it please the Court, I'm James Moulton for the Appellants. This case was an FLSA case involving, it's a collective action case involving 39 plaintiffs and it actually involved quite a few different causes of action or claims, but we have chosen in this appeal to, rather than take a shotgun approach, just to focus on the bonuses in this case. In this case, the plaintiffs claim that the employer should have included nondiscretionary bonus payments and total remuneration had failed to do so, and therefore the Court should have overturned the jury's verdict and granted Rule 590B relief. Now, in order for a discretionary bonus to be excluded from total remuneration when calculating the regular rate, the employer must retain discretion as to whether the employment will be paid, the employer must retain discretion as to the amount that is paid, the employer must retain discretion as to the payment of the bonus near the end of the period in which it covers, and the bonus must not be paid percent to any prior contract, agreement, or promise. That is found in the Code itself. It's also a quote from McLaughlin v. McGee Brothers. Now, J-4, which is 4J-LJ, that's the TVA for J-4, paid a stage bonus. There was no dispute at trial whatsoever that the stage bonus was paid, nor was there any dispute as to the nature of the stage bonus. The stage bonus was simply a production bonus. If the employees produced, if they performed a stage during the pay period, they received $100 extra. This is just simply a production bonus. The more stages that were completed, the more bonus was paid. There was one employee, Israel Banda, that testified that he received as much as $2,300 in stage bonuses in a single pay period. None of these amounts were included in calculating the total remuneration and the regular rate. I got the impression the jury didn't hear much about the stage bonus. Can you tell us what they did hear? Yes, they heard from the vice president of 4J, which was Ms. Clark. Ms. Clark testified that the bonuses were paid, that it was a production bonus, that it was earned in the pay period that it was paid, and that it was earned at the pay period that the stage was actually completed. And then the other, there was one other witness that testified regarding it was Israel Banda, who was a supervisor. Now, this production bonus was available to FRAC supervisors, hourly, who were hourly employees. Mr. Banda was one of them. He testified that he received the bonus. It was something he looked forward to, that he regularly received it every pay period. Was that a stage bonus? Yes, the stage bonus. He also testified that it was calculated, initially it was calculated at $75 per stage completed. Later, it was increased to $100 per stage bonus, per stage. Also, we submitted, in the brief, there were submitted documents showing where he, before he was even paid the stage bonus, where he was calculating on his timesheet how much the stage bonus he would receive. So, he clearly anticipated receiving the stage bonus. And the jury heard all of that? Yes, Your Honor. And I guess, what's troubling to me is the argument you made, if the jury heard all that, and you're not complaining that there is some evidence or some witness that the jury should have heard from but didn't. You're not making that complaint? No, Your Honor. And you're not making a complaint that they heard some testimony or saw some evidence that should not have been admitted? No, Your Honor. Not that. And you're not making any claim that there was any . . . Well, sorry. Go ahead. Sorry to interrupt. I did mention, in the brief, that during closing arguments, the opposing counsel got up and testified that, well, he stated that these employees earned over $100,000 a year and the FLSA should not apply to them. Well, the jury was given a charge, I'm almost certain. Correct. That what the lawyers say is not evidence. Correct. So, assuming the jury heard that charge and then followed it, it's hard to allege that a statement in closing argument led them to make a wrong ruling, despite all the evidence they heard and despite all of these jury instructions that they got about what they were supposed to find. Yes, Your Honor. I believe that the jury just got it wrong and that the court should have granted relief. Now, the other bonus was the performance bonus. The performance bonus was actually based on a contract. Quick question. Is the nature of these bonuses, whether they're discretionary or non-discretionary, is the nature of them a pure legal question? I believe it is, Your Honor. I wonder, why is the jury deciding that question, whether they're discretionary or not? That was an argument that I made to the court. It's also an argument in the brief that, essentially, I believe that it is a mixed fact and law question. I do believe that it is ultimately a question of law for the court to make, whether or not a certain fact situation is a violation of the FLSA. The problem is that the standard jury instructions just state, did the defendant breach or violate the FLSA? That, to me, is a question of . . . Well, a couple of things in that connection. Did you try the case? Yes. All right. So, one, was there a motion for summary judgment to ask the court to make a determination that as a matter of law, these bonuses were non-discretionary? Yes. And the court obviously denied that? Correct. All right. Now, the performance bonus was likewise. There's a contract. It was given to all of the employees at the time of fire, and most importantly, it gave a scale, basically, of the amount of bonus that they would receive per hour worked. So, if they worked for one hour, they would get a dollar bonus. If they worked two hours, they'd get two dollars. That's for Class A. For Class B, there was 75 cents. For Class C, there was 50 cents per hour. This is clearly a non-discretionary bonus, and this was argued to the trial court. Now, another issue that was brought up in our appeal is the employer status of Mr. John Jalewka. He is the sole owner of 4JLJ. As I make the argument, a sole member LLC is a disregarded entity, according to the IRS, and the jury, for some reason, found that he was not an employer, despite the fact that he testified that when times were down, he would actually pay the employees out of his pocket. Why is he making payments, or why is he paying their wages if he's not an employer? He also admitted that he made all of the ultimate decisions at the company. And finally, there is a cross appeal, and that deals with some attorney fees that were granted or given to plaintiffs due to the defendant's discrepancy abuses in this case. With regards to the attorney fees, the court, what happened was we had requested GPS data. They had made the MCA exception affirmative defense, and that brings up one other matter. I do believe that they have waived the affirmative defense regarding the bonuses. They did not ever plead any affirmative defense with regards to the bonus payments. Additionally, it's not even mentioned in the pretrial order. As this court has ruled, if it's not in the pretrial order, it's waived. There's no discussion about prejudice or anything like that. It's just waived, and they completely left it out of any of their defenses, although it is mentioned as one of our claims. With regard to the sanctions, they're arguing that the attorney fees ought to be overturned. The court issued the sanctions under Rules 26 and 37 for the failure to turn over these documents. The attorney fees, under Rules 26 and 37, it's very clear that the court had the discretion to issue attorney fees. In fact, Section 26 says that the court must issue sanctions. Defendants have also argued that they should have been given more court costs than what was actually given to them. They were given court costs of about $14,000, but they were asking for roughly another $20,000. Of the $15,000 that the court failed to give them was copy costs that they had failed to specify what the copies were for. The court stated that, as presented, she could not issue those costs to them. They've appealed that, and it's clearly within the court's discretion to withhold those costs. Now, the other cost was roughly $4,500 in trial transcripts. What they failed to mention is that those trial transcripts that they're seeking costs for were ordered six days after the trial was concluded. The court didn't even mention anything about the sanctions that were granted to the plaintiffs as a result of the discovery abuses in her rationale for not awarding those costs. Are there any questions? No? Okay. All right. We'll reserve time for rebuttal. All right. We'll reserve time for rebuttal. Thank you, Counsel. Appellee? May it please the Court, Nolan Knight here on behalf of the Appellees' Cross Appellants, 4J LLC, and Mr. John Dufka. Barring any contrary preference from the Court, the sequence in which I hope to address issues this morning is to first take up the jurisdictional defect with the Edwards Appellant's principal appeal, to then talk about the lower court's error by issuing three tiers of punitive sanctions, and to conclude by responding to the principal appellate points regarding the soundness of the jury findings, particularly in light of the especially deferential standard of review that this court applies. With respect to the jurisdictional defect, this court's authority is clear that a successive Rule 59 motion to reconsider does not toll the deadline to perfect an appeal. The Edwards Appellant nonetheless waited longer than 30 days beyond the March 29, 2017, ruling of the lower court, which would have been April 26, 2019, to file their notice of appeal. They, in fact, waited until June of 2019 because they clearly misperceived the effect of a second, successive, and substantively redundant motion to reconsider. This court's holding in Charles M. v. Northeast in 1989 established that successive motions of the kind have no procedural effect with respect to tolling, and this court has not indicated otherwise since that time. The principal appeal, therefore, is untimely. Because, however, I will not be so presumptuous as to assume that the court will resolve that issue as we suggest it be resolved, I am prepared today to address the full slate of substantive issues that have been presented to the court. And as I indicated, I will begin, as far as a substantive issue is concerned, by taking up the three tiers of punitive sanctions imposed by the court. There are two general categories of errors with the court's ruling. The first is that the court committed clear error because there was no basis in the record, no reasonable inference that could substantiate either the first, the second, or the third tier sanction. But apart from the clear error with respect to the court's fact findings are that there are legal restraints, both specific to electronic data, as well as, in general, that prohibit a court, no matter how angry or frustrated the court may be with the parties, from using sanctions to punish as opposed to compensate. With respect to the factual errors, there were two issues, two factual predicates, if you will, that the court relied upon. The first issue related to a purported spoliation of the electronic data at issue, which is a concept that, quite frankly, was irresponsibly introduced into this case by the Edwards Appellants as an initial matter. A mere four days before the parties were set to go to trial, the Edwards Appellants filed a reply submission regarding an entirely unrelated substantive issue, wherein they made an obtuse statement to the effect that it is assumed that electronic data they had requested almost two years prior, but did nothing to press in that interim. It was assumed that that data had been spoliated. That triggered at a hearing four days later, on October 17, 2017, an extended discussion with the court with respect to whether or not the data, in fact, had been spoliated. And it served as the principal predicate for the court's imposition of initially an adverse inference instruction, as well as a burden. Did they ever file a motion to compel? They never did, Your Honor. What was the explanation for their failure to file a motion to compel? Your Honor, they candidly admitted in that reply submission that I just made reference to, first, they were under no mistake that this was an issue of who should have the burden to recover the data. But then, at the hearing on October 17, they said, and this is at Record Site 8117, I quote, and this is Mr. Moulton, on behalf of the Edwards Appellants, to be honest with you, I thought it was their burden to prove throughout this entire trial until your ruling, the ruling being the ruling where the court placed the burden of proof that would require the use of electronic data on the Edwards Appellants. Mr. Moulton continues, and if they didn't want to produce the evidence that would prove it, that was up to them. But it has become an issue, and once it did become an issue, that's when he claims he approached my colleagues and requested the data. They made a calculated decision to not press the issue with respect to the electronic data, although we interpose an appropriate Rule 26b1 objection with respect to who should bear the burden to recover that data. Because the data was not within our physical possession. It was maintained by a third-party service provider, Fleetmatics, and we had the right to object on the grounds that if anyone was going to incur the burden to recover that data, it should be them. Perhaps we were mistaken. Perhaps we were correct. But that issue did not form the basis for the court's sanction, which is the problem with the second pillar that you relied upon for the first, second, and third tier. The spoliation issue even the court came to recognize was unwarranted because even as the Edwards appellants admitted, we recovered everything, provided them everything before trial, and they were allowed to use all of the data at trial. So spoliation, the court recognized, could not justify any of the tiers of sanction. The court therefore relegated itself to this issue as to whether or not my clients had done something to mislead the Edwards appellants into thinking there was no such data as an initial matter. There is no basis in the record for that finding nor reasonable inference. And what speaks conclusively to that are admissions that the Edwards appellants made on the record. I just made reference to one that at the October 17, 2017 hearing, two years removed from when they first requested the data, literally at trial, he's admitting to the court, oh, we made a calculated decision to not go after the data. You can't make calculated decisions to not go after something that you are under the impression does not exist. So that's one admission. But there were two that preceded that. They contemplated the Edwards appellants filing a motion to compel. They didn't press it, but they contemplated doing so. They sent a draft motion to compel to the initial counsel representing my clients in this matter. The document is dated March 2, 2016. This is what the Edwards appellants in that document articulated with respect to their data. Quote, most, if not all, of the documents are electronic documents and would require little effort or expense to produce. Here again, you don't talk about the effort or expense to produce something that you're under the impression doesn't exist. And that's record site 4503. The next admission in the reply submission that I just talked about filed a mere four days before trial on October 12, 2017 at record site 4362. This is what the Edwards appellants say. Again, two years after the events that the court said substantiated her belief that we had misrepresented to the Edwards appellants where the data existed. This is what the Edwards appellants had to say. The 4JLJ appellees, quote, did not respond that such data did not exist, but rather objected and claimed that the gathering of such data would be overburdensome. That's precisely what we did because, again, whether or not we were right or wrong, we have the right to interpose a Rule 26B1 objection with respect to the burden, which we did, but the key question here is, is there any basis in the record to directly indicate or from which one can infer that the Edwards appellants perceived that to be a representation of the nonexistence of the data? Quite clearly, they did not. If four days before trial, in which they claimed the data was essential, they are telling the court we did not represent that the data did not exist. So the court did not have any factual basis for either the first, the second, or the third tier sanction. For that reason, they were erroneous. Independent of the factual deficiency are the legal restraints placed upon a court's power to sanction. Rule 37E occupies the field entirely since 2015 with respect to appropriate remedial recourse regarding electronic data. Independent but paralleling Rule 37E is a principle reiterated in Goodyear v. Hager, which says in no uncertain terms, and I reiterate because it is a long-established but perhaps underappreciated sentiment, although this court and several members of this panel, respectfully, have even written on the fact that the utility of a sanction, in particular Rule 37, is limited to compensation, not, as this court in no uncertain terms said, to teach individuals a lesson. With respect to Rule 37E and the limitations that it places, one of the things that I think is instructive in that regard is first the text of the rule that plainly says, quote, if electronically stored information is lost and it cannot be restored or replaced, only then does a court progress into an analysis of what an appropriate sanction will be. But even in that progression, the court is limited to, quote, no greater than necessary measures with respect to the nature of the sanctions. We don't even get to the no greater than necessary issue here because we quite clearly incurred the cost, my client, the burden and the expense of going to the third-party service provider to ensure that they could forensically recover all of the data that the Edwards appellants contended was so essential for their case. Rule 37E, by its text and the advisory committee notes make clear no further measures should have been taken by the court at that point because any further measures go beyond returning everyone to the status quo, which was to ensure that they had the data for trial. The only utility of any further measures, as the court made clear in her actions and with her words, was to teach a lesson and to punish my client at the first tier, at the second tier, and at the third tier. The Goodyear case for a slightly different reason stands for the same principle as I mentioned. It's more so grounded in due process principles and the notion that if you're going to punish someone, that is a quasi-criminal undertaking, which cannot be done in a civil context in the way that the court here did so. One other issue that I'll add with respect to how I think it's appropriate to view the nature of the sanctions imposed by the court. After the court vacated the adverse inference instruction, but indicated that it was going to press forward with the first tier burden-shifting sanction, we petitioned the court to allow us to appeal to this court interlocutory so we could take up at that time whether or not the court had overstepped with respect to the limitations imposed by Rule 37E as well as the Goodyear principle. The court declined our ability to do so, which has compounded and fed into the odd dynamic that we find ourselves in now whereby we had an unduty punitive first tier sanction that affected the merits when all the court was allowed by Rule to do was to offset the initial inconvenience of the Edwards appellants not having the data. But then we couldn't get that issue resolved. We overcame that at trial, which clearly, I think, should resolve any court's concern as to whether or not we had suffered enough, if you will, and yet after prevailing... You're not talking about the adverse inference instruction? No, the burden-shifting sanction, which the court did not vacate even though we provided everything and we had addressed precisely the evil or the ill. Because the adverse inference instruction was not given. It was not given, that's correct, Your Honor. And so the very unique dynamic of us overcoming a sanction that was inherently punitive only to then be taxed approximately $100,000 in attorney's fees and denied the full extent of our Rule 54D cost premised upon the same reasons that the court had shifted the attorney's fees as an issue matter and shifted the burden of proof. We therefore think that in addition to the factual deficits that make the sanctions inappropriate, the legal prohibitions under Rule 37E and what I refer to as the Goodyear Principle, although it's a long established principle, made the sanctions inappropriate. With respect to response to the principle appellate point regarding the soundness of the jury findings, I think there are two issues. One is somewhat self-evident. The other, second, and I'll invert the order that I was going to discuss these issues, Judge Graves, I think that you touched upon it. What the Edwards appellants are attempting to do by way of appeal is in essence  They assented to submit to the jury and precisely the way the issues were submitted to the jury, all the legal issues with respect to which the jury then heard testimony evidence, documentary evidence and was allowed to assess the credibility of witnesses in reaching its findings. It is too late for them to show up and say things like, we don't necessarily feel as if the jury was sufficiently sensitized to who had the affirmative burden or the proof regarding whether or not a bonus was discretionary or not. I first think they're mistaken on the law. This court's ruling in Carley, and in fact a subsequent ruling from 2019 in which Judge Willey and Judge Weiner, I believe you were on the panel in Welltech, I think made clear that when you're talking about exceptions under the FLSA, which is what a discretionary versus non-discretionary bonus is as opposed to an exemption, which are exclusively found in 213, and that is not inclusive of the discretionary issue, the exceptions are matters that lie with the plaintiff as far as the burden of proof. But independent of them being mistaken on the law, the notion that you don't preserve your objection at trial with respect to how the burden is articulated in the charge, you don't identify in your statement of issues to this court, you don't brief to this court why there was an issue with the jury charge on those issues, but then expect release by surreptitiously attempting to characterize it as an evidentiary issue is untenable. The more obvious issues are that the jury did not hear a lot about the character of the stage bonus or the performance bonus, but that is because the Edwards appellate did not prove their case. In fact, if I were a juror in this case, there's some fundamental questions that I would have been asking, such as why haven't the Edwards appellate put forth a single witness, not just a named plaintiff, but a single witness who can say unequivocally I expected to get the stage bonus or the performance bonus. I took it on faith that that was coming my way. It was a certainty in my mind that I was going to be entitled to one or the other. No evidence of record in that regard. If I was a juror in this case, I also would have been curious why the plaintiff's proper when subjected to cross-examination could not string together a coherent narrative with respect to the purportedly non-discretionary nature of the bonuses. As we have briefed, I respectfully think the Edwards appellates have inverted the import of the fact that their witnesses equivocated on whether or not they, in fact, were certain that the bonuses were coming. That would have left a fairly prominent impression on me as a juror, as it clearly did with this jury. Other issues that would have been of concern to me as a jury, there is no document that even memorializes the stage bonus. There is a document that memorializes the performance bonus, but that document says in no uncertain terms don't expect this. That a document also includes all manner of factors that 4JLJ was entitled to consider when analyzing the issue. Subjective considerations such as cleanliness, whether or not you had a poor attitude, whether or not you reflected well on the company. If I was a juror and I'm reading a document that says my boss gets to grant or withhold a bonus from me, depending upon whether or not he thinks I'm adhering to sufficient high standards of cleanliness, or if my attitude is poor, I may be grateful if I get the bonus, but I'm certainly not going to take for granted that I'm entitled to that bonus. Those are precisely the kinds of considerations that the jury here was entitled to weigh, that the jury here did weigh, and in weighing those issues, resolved this case in favor of 4JLJ. The analysis as to Mr. Jalufka and his non-employer status is not materially different. For the modest evidence that we've heard the Edwards appellants articulate as to whether or not he was an employer, there was overwhelming evidence from plaintiff witnesses, from Ms. Rebecca Clark, from John Jalufka, all of whom addressed the quote-unquote economic reality criteria and said none of those criteria applied with respect to Mr. Jalufka. The jury was entitled to, and it did find that evidence more compelling. We therefore respectfully submit that the jury verdict should be sustained to the extent this court finds it in its jurisdiction of that issue, and the three-tier punitive sanctions should be reversed. Thank you. Thank you, counsel. Rebuttal. Judge Graves, I'd like to first address the question that you had regarding the motion to compel. I did draft a motion to compel regarding the documents, the GPS records, I forwarded it to opposing counsel. What Mr. Knight failed to mention to this court is their response was there are objectionable requests but we wouldn't have any anyway. We wouldn't have anything anyway. And based on those representations, I did not file the motion to compel. We went forward, I sent all sorts of other requests for production to try to recreate these documents, these GPS records. There's no way I could have known that there were over 30,000 pages of just summaries of these documents. At that time, they actually still had the service. They were still paying for the service. They could have just pushed some buttons and they could have entered Israel Banda, and it would have came up with which vehicles he had driven. But at the end of the day, when these documents were finally produced just a couple of months before trial, and trial was four years after these documents were requested, once these documents were produced, they were just basically GPS coordinates. And we had to get them summarized. They actually paid for these summarizations, and it was 30,000 pages of summaries that were almost unusable. Now, what they've also failed to mention is that there were requests for admissions, which they never admitted that these drivers actually drove vehicles weighing less than 10,000 pounds. All they said is, we don't have sufficient information, when in fact they did, and they never admitted and never amended their admissions. With regards to the attorney fees, the court, we actually asked for 149,000 attorney fees to compensate us for all of the hours spent due to the failure to produce these records timely. The court looked at it carefully and decided only 95,000. They didn't actually object to that. They have, I believe, objected to like four or five of the time records, which amounted to about a half an hour of time, and most of those the court rejected. Most of their objections, she denied. So clearly, it didn't go beyond just mere compensation. He wants to state that failure to all of the costs claimed as a penalty, just because they say it's a sanction doesn't make it a sanction. It was denied because they failed to give the specificity required under the law to get those, to recover those costs. That's what the court actually stated, and that as presented, she could not award them. With regards to the trial transcripts, he didn't even touch on that. Again, those trial transcripts were just ordered six days after trial, and there's no evidence that they were even necessary. Now, with regards to the bonuses, it's very clear that these bonuses were non-discretionary bonuses. There's no question under the law. There's no way you can reconcile this decision with the case law from the U.S. Supreme Court or the statute. He also mentioned the performance bonus that the bonus states that this bonus is not to be expected, but the very next sentence is it is to be earned. Again, the court, as I've mentioned, there's four criteria that they must meet in order to be a non-discretionary, in order to be a discretionary bonus, one of which is that it cannot be based on a prior agreement. There's no mention of discretion in there. It's just it cannot be based on a prior agreement. Here we have a contract that's given to the employees at the time of hire. There's no way that this could be anything other than a non-discretionary bonus that this would submit to the court. We thank you for your time. Thank you, counsel.